IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NAKIA HARRIS | * | CIVIL ACTION NO. 18-13356 |
| | * | |
| Plaintiff, | * | |
| | * | JUDGE SARAH VANCE |
| VS. | * | |
| | * | |
| LOUISIANA OFFICE OF JUVENILE JUSTICE | * | MAGISTRATE JUDGE VanMEERVELD |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

1. This is an action to halt and seek redress for the unlawful discrimination on the basis of disability that the Defendant has implemented in its business practices.

2. The Americans with Disabilities Act of 1990 ("ADA") expressly prohibits discrimination in employment on the basis of disability. 42 U.S.C. §§ 12101, *et seq*.

3. Despite these mandated provisions, the Defendant has violated the Plaintiff's rights.

**PARTIES**

**PLAINTIFF**

4. The Plaintiff is Ms. Nakia Harris ("Ms. Harris"), who was employed as a Juvenile Probation and Parole Officer in the New Orleans Region of the Louisiana Office of Juvenile Justice (the "Office"), which is a part of the Louisiana Department of Public Safety and Corrections. She is a person of the age of majority and is the primary caregiver for her disabled daughter who regularly attends doctors' appointments and who previously had standing physical therapy appointments two to three times per week to treat her Cerebral palsy.

**DEFENDANTS**

5. The Louisiana Department of Public Safety and Corrections (hereinafter the "Department"). It can be served with process through the Office of the Secretary, James M. LeBlanc in accordance with La. C.C.P. art. 1265. This is so because the Secretary, James M. LeBlanc, serves as chief executive officer of the Department.

**FACTUAL BACKGROUND**

6. Ms. Harris began her employment with the Department in New Orleans Region One as a Juvenile Probation and Parole Officer on July 1, 2010.

7. As a Probation and Parole Officer, her responsibilities included attending Orleans Parish Drug Court ("Drug Court") and working as a Master Structured Assessment of Violence Risk in Youth ("SAVRY") Trainer, Sentinel Trainer, Interstate Compact for Juveniles Liaison, and the National Youth in Transition Database ("NYTD") Administrator.

8. Starting August 2012 Ms. Harris was permitted to work a flexible schedule of 6:30 AM to 3:00 PM, allowing her to take her daughter to physical therapy appointments in the afternoons.

9. Ms. Harris worked this flexible schedule without incident from August 2012 until 2017 when the Drug Court reset itself to a later time.

10. Effective Friday, September 15, 2017, the Drug Court was reset from Thursdays at 12:00 PM to Thursdays at 2:00 PM.

11. This change meant that Drug Court could extend to 5:00, well beyond her shift end time of 3:00 PM.

12. Ms. Harris first notified the Department on August 18, 2017 that her Drug Court role would need to be reassigned to another Probation Officer due to the scheduling conflict.

13. She also notified the Drug Court directly of this conflict, and Judge Cook-Calvin stated that she could arrive at Drug Court at 1:00 PM, give an oral report, and leave at 3:00 PM.

14. The Drug Court informed Ms. Harris that it was not opposed to a different probation officer but was opposed to multiple probation officers handling the tasks she previously performed.

15. Upon information and belief, the Department employed other probation officers who worked the hours Drug Court was in session who were qualified and available to replace Ms. Harris in that role.

16. Then, on September 1, 2017, Ms. Harris sent an email to Daphne Johnson and Regional Manager Lakeasha Cooley informing the Department of the permission she received from Judge Cook-Calvin.

17. Probation and Parole Supervisor Daphne Johnson responded to Ms. Harris' email that same day stating that "no final decision had been made" concerning her Drug Court schedule, asking her to refrain from notifying the Drug Court of any scheduling changes until instructed to do so, and asking her to shift her Thursday work hours to 7:00 AM through 3:30 PM to accommodate Drug Court's new time.

18. On September 5, 2017, Ms. Harris met with Daphne Johnson to discuss this Drug Court attendance issue, and she again asked if her specific Drug Court duties could be reassigned to a probation officer scheduled to work during the entirety of Drug Court hours.

19. Daphne Johnson explicitly denied Ms. Harris request on the basis that "Unit Heads may rescind flexible work schedules and/or flexible work hours with no prior notice if it is determined that such schedules have adversely affected the efficient operation of the section or of the agency."

20. However, Daphne Johnson did reassign all of the "extra duties" Ms. Harris performed outside of her regular probation officer assignments.

21. Ms. Harris then met with Regional Manager Lakeasha Cooley on September 11, 2017 to discuss Daphne Johnson's denial of her request and rescission of her flexible schedule on Drug Court days.

22. Regional Manager Lakeasha Cooley responded by saying "that's your problem, the agency can rescind a schedule based on the agency's need."

23. When Ms. Harris explained that the agency's need can be met by any other probation officer in the building who works past 3:00 PM, she was told that Drug Court is her assignment and she will work the hours needed to accommodate Drug Court.

24. Ms. Harris then filed an official grievance the following day on September 12, 2017, to which District Manager Jacqueline Page did not provide any official response within seven days of receipt.

25. Due to District Manager Jacqueline Page's lack of response, Ms. Harris referred the grievance to the Second Step by having it forwarded to Assistant Secretary Glenn Holt.

26. Ms. Harris then met with District Manager Jacqueline Page and Assistant Secretary Glenn Holt in the New Orleans Regional Office on October 10, 2017 regarding her grievance.  In the meeting it was suggested that Ms. Harris leave her daughter waiting after school while she handles her Drug Court duties and inquired what she would do if the flexible schedule was not available to her.

27. Assistant Secretary Glenn Holt ultimately agreed with Daphne Johnson's and Regional Manager Lakeasha Cooley's response, finding no reason for another probation officer to be assigned to replace Ms. Harris in Drug Court.

28. As a result, Ms. Harris then referred her grievance to the Third Step by having it forwarded to Deputy Secretary James Bueche, who, in a letter dated October 11, 2017, concurred with the decision of Assistant Secretary Glenn Holt.

29. On September 19, 2017, seven days after Ms. Harris first filed her grievance on September 12, 2017, Ms. Harris submitted a Family Medical Leave Act ("FMLA") request in an attempt to gain the relief she needed to be able to bring her disabled daughter to necessary and ongoing doctor and physical therapy appointments.

30. Ms. Harris' FMLA request was properly endorsed by her daughter's pediatric orthopedic surgeon, Dr. Sean Waldron.

31. Then, on both September 21, 2017 and September 29, 2017 in addition to numerous subsequent dates, Ms. Harris worked past 3:00 PM forcing her daughter to miss critical physical therapy sessions as a result of the scheduling accommodation denials.

32. Separately, on September 12, 2017, the same day Ms. Harris submitted her grievance, she received a "Letter of Counseling" in reference to two incidents which occurred on August 29, 2017 and August 30, 2017.

33. The "Letter of Counseling" states that on August 29, 2017, Ms. Harris "failed to show up to work" for her scheduled shift and she "failed to call to report" that she would not be coming in.

34. However, Ms. Harris did not report to work because she received a notice from the State of Louisiana Division of Administration indicating that due to the Tropical Storm Harvey, Louisiana state offices would be closed that day. Additionally, the Mayor of New Orleans issued a statement urging all residents to "stay home" and ordered all New Orleans public schools and all governmental offices closed.

35. Additionally, Regional Manager Lakeasha Cooley sent an email advising supervisors to not mark any leave as unscheduled for that day.

36. The "Letter of Counseling" also states that on August 30, 2017, Ms. Harris failed to report to work on time and failed to properly notify her supervisor that she would be late.

37. However, Ms. Harris followed policy by immediately notifying her supervisor when she woke up that she would be late.

38. Although the "Letter of Counseling" states it is not "official disciplinary action," it goes on to state that "it could be used as a prior offense to enhance penalties if you are again found to be in violation of employee rules or policies."

39. Ms. Harris ultimately was approved for FMLA status by HR Liaison Earnessa Moncriffe and Regional Manager Lakeasha Cooley on or about October 10, 2017, with an effective date of October 5, 2017.

40. However, the Louisiana Employees Online page indicated that Probation and Parole Supervisor Daphne Johnson subsequently rejected Ms. Harris' FMLA request two days later on October 12, 2017.

41. Ms. Harris was ultimately constructively discharged on or about February 20, 2018.

## JURISDICTION AND VENUE

42. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

43. On November 15, 2017, Ms. Harris timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against the Defendant for discrimination.

44. The EEOC issued a Notice of Right to Sue letter on July 25, 2018.

45. Venue is proper because the discrimination occurred in this District.

46. The Court has jurisdiction over the Defendant because it is located and operates in the State of Louisiana.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

47. The preceding paragraphs are incorporated as if fully stated herein.

48. The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

49. The statute specifies that the term "discriminate against a qualified individual on the basis of disability" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

50. "Discriminate" within the meaning of the ADA also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

51. Although not an exhaustive list, a "reasonable accommodation" may include "job restricting, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations." 42 U.S.C. § 12111(9).

52. Ms. Harris is the primary caregiver for her daughter with Cerebral palsy, a recognized disability under the ADA, which Defendants were all explicitly aware.

53. She specifically discussed her scheduling needs with them and explained why it was necessary for her to maintain the previously approved flexible schedule allowing her to leave at 3:00 PM.

54. Thus, the Defendants knew Ms. Harris had a "relationship or association" with a person living with a recognized disability.

55. Through the course of those meetings after the Drug Court announced its resetting, Ms. Harris asked if other Juvenile Probation and Parole Officers whose regularly scheduled work hours corresponded with the Drug Court hours could replace her in that specific role.

56. Such a change would not "impose an undue hardship" because, upon information and belief, numerous other Probation and Parole Officers were qualified and available to replace Ms. Harris in that role.

57. Although Ms. Harris proposed a reasonable accommodation allowing her to remain in her job position and take her disabled daughter to critical appointments, the Defendants denied her request knowing her daughter would miss those doctor and physical therapy appointments scheduled on Drug Court days.

58. Additionally, while Probation and Parole Supervisor Daphne Johnson did reassign all of the "extra duties" Ms. Harris performed outside of her regular probation officer assignments, such tasks did not impede Ms. Harris from taking her daughter to the necessary appointments.

59. Conversely, Ms. Harris' only reasonable accommodation request allowing her to take her daughter to the necessary appointments was denied, which is a violation of the ADA.

60. Because of the Defendants' actions, Ms. Harris has suffered and will continue to suffer economic and non-economic harm.

## COUNT II: VIOLATION OF TITLE VII – RETALIATION

61. The preceding paragraphs are incorporated as if fully stated herein.

62. Title VII of the Civil Rights Act prohibits retaliation against employees who make a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3.

63. "To prove retaliation under Title VII, the plaintiff must establish: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Equal Employment Opportunity Commission v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017).

64. On September 12, 2017, Ms. Harris filed a grievance specifying what transpired on September 1, 5 and 11, 2017 regarding her reasonable accommodation requests and the Defendants' reactions to that reasonable accommodation request.

65. Filing such a grievance is activity protected by Title VII.

66. That same day, adverse action was taken against Ms. Harris when she received the September 12, 2017 "Letter of Counseling."

67. Although the "Letter of Counseling" states it is not "official disciplinary action," it goes on to state that "it could be used as a prior offense to enhance penalties if you are again found to be in violation of employee rules or policies" and is accordingly an "adverse employment action."

68. This adverse employment action occurred the same day Ms. Harris submitted her grievance and one day following her September 11, 2017 meeting with Regional Manager Lakeasha Cooley where Ms. Harris stated she would be submitting such a grievance.

69. The "Letter of Counseling" was sent and placed in Ms. Harris' supervisor's files without basis and in retaliation for Ms. Harris instituting the grievance process.

70. Additionally, Assistant Secretary Glenn Holt, Deputy Assistant Secretary for the Northern Region Carolyn Lewis, Deputy Assistant Secretary for the Central and Southwest Region Kristi Nelson, and Deputy Assistant Secretary for the Southeastern Region Jacqueline Page together authored a Memorandum dated October 16, 2017 rescinding the flexible schedule allowing Ms. Harris to continue to facilitate her daughter's doctor and physical therapy appointments.

71. Although this Memorandum applied to all Probation and Parole Officers, it removed the 6:30 AM to 3:00 PM schedule.

## COUNT III – VIOLATION OF LOUISIANA EMPLOYMENT DISCRIMINATION LAW

72. The preceding paragraphs are incorporated as if fully stated herein.

73. The Louisiana Employment Discrimination Law stipulates that "no otherwise qualified person with a disability shall, on the basis of a disability, be subjected to discrimination in employment. La. R.S. § 23:323.

74. The Department employs far more than twenty full time employees and is thus a covered employer.

75. As detailed in the ADA allegations above, Ms. Harris suffered discrimination on the basis of disability status.

76. As such, the Department is in violation of the Louisiana Employment Discrimination Law.

## JURY TRIAL REQUEST

77. Ms. Harris hereby notifies the Court and Defendant of her intention to seek a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in Plaintiff's favor and against Defendant, including the following relief:

a. Appropriate injunctive relief, including but not limited to an order restraining Defendant from engaging in further discriminatory conduct of the types alleged in this Complaint;

b. Compensatory and consequential damages;

c. Punitive damages;

d. Pre-judgment and post-judgment at the highest lawful rate;

e. Attorneys' fees and costs of this action; and

f. Any such further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

/s/ John E. Bicknell, Jr.
Galen M. Hair, T.S., LSBA No. 32865
John E. Bicknell, Jr., LSBA No. 36802
**SCOTT, VICKNAIR,**
**HAIR & CHECKI, LLC**
909 Poydras Street, Suite 1100
New Orleans, LA 70112
T: (504) 684-5200
F: (504) 613-6351